**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FANNIE MAE, §
§
   Plaintiff §
§
v. §
§ Civil Action No. 1:23-cv-00862-JMC
§
AMELIA AID PROPCO LLC, *et al.*, §
§
   Defendants. §

## AGREED APPLICATION FOR APPOINTMENT OF RECEIVER

Plaintiff Fannie Mae ("***Fannie Mae***") files this Agreed Application for Appointment of Receiver ("***Application***") under Federal Rule of Civil Procedure 66 for certain properties owned by each of the above-captioned defendants (each a "***Defendant***" or "***Borrower***", and collectively, the "***Defendants***" or "***Borrowers***"), all of which are collateral for loans owned by Fannie Mae.

## I.       Introduction

1.        Fannie Mae is a government-sponsored private corporation which was established by Congress to carry out vital public policies enumerated by statute:  to create a secondary market for residential mortgage loans, to stimulate the flow of private capital into housing, and to improve the affordability of home ownership, thereby bringing stability to the U.S. housing market.  *See* 12 U.S.C. § 1716.  Fannie Mae fulfills its statutory mission, in part, by purchasing mortgage loans from a network of lenders that make loans directly to consumers in what is known as the primary market.  Fannie Mae's purchase of mortgage loans from lenders such as mortgage lenders, banks, thrifts, housing finance agencies, and credit unions allows those primary market lenders to replenish the funds available for mortgage lending.

2.        Fannie Mae's borrowers include numerous affiliates of AID Holdings, LLC ("***AID***"), one of the largest owners of senior living facilities in the United States.  Fannie Mae's borrowers also include numerous affiliates of Bluegrass RE Holdings, LLC ("***Bluegrass***"), another

large owner of senior living facilities in the United States.  Either AID or Bluegrass is the equity owner of each of the Defendants herein, and each Defendant owns a property that serves as collateral for indebtedness owed by each Defendant to Fannie Mae.  Since the COVID-19 pandemic, AID's and Bluegrass' financial condition (and the underlying financial condition of each of the underlying properties and its accompanying operations) has been declining.  In total, AID and Bluegrass, and their respective affiliates, owe Fannie Mae approximately ***$700 million***. With some exceptions,[1] the loans are "non-recourse", meaning that if indebtedness remains after Fannie Mae has sold the collateral, Fannie Mae generally cannot seek recovery from other assets of its borrower.  For this reason, it is critical for Fannie Mae to preserve the value of the collateral.

3.     Each Defendant has admitted that it is in default, and each Defendant has consented to the appointment of a receiver. More specifically, Section 3(e) of each Deed of Trust described herein provides that, upon the occurrence of, and during the continuance of any Event of Default, should Fannie Mae apply for the appointment of a receiver, each Defendant expressly consents to the appointment of a receiver, including an appointment *ex parte*.

4.     Due to the nature of the Properties, and the requirement to provide advance notice to State regulators of a change in control, it will take months to effectuate foreclosure of the Properties.  During that time period, the Defendants will continue to collect and spend rents from the Properties (which are part of Fannie Mae's collateral) for the continued operation and maintenance of the Properties, but not for paying debt service, in direct violation of the Loan Documents.  Because those rents cannot be recovered after they are spent, foreclosure (months from now) is an insufficient remedy.   A receiver is therefore needed to take control of the

---

[1] The exceptions include, without limitation, certain fraud-related conduct or waste of the Property.

Properties and preserve the rents (and the underlying values of the Properties) pending foreclosure or, potentially, a Court-approved receivership sale.

5.      Accordingly, in order to facilitate the transition of ownership and operations, Fannie Mae seeks the appointment of a receiver to enter upon and take exclusive power, authority, and control over the assets, management, operations, maintenance, leasing, repair, and preservation of the following properties, real and personal, including the operations of the senior housing communities situated on such properties, except as set forth herein (as fully defined in the applicable Deeds of Trust described herein, each a "***Property***" and collectively, the "***Properties***"):

a.      The following Properties are referred to collectively herein as the "***MCFA 54 Properties***", and the corresponding Property Owners/Defendants are referred to collectively herein as the "***MCFA 54 Defendants***".

| **Property Name (Type)** | **Property Address** | **Property Owner/Defendant** |
|---|---|---|
| Amelia Place | 57 W. Ferndale Drive, Council Bluffs, IA 51503 | Amelia AID Propco LLC |
| Ashley Place | 526 Haltiwanger Road, Greenwood, SC 29649 | Ashley AID Propco LLC |
| Garden Way Place | 2400 Garden Way, Hermitage, PA 16148 | Bentley AID Propco LLC |
| Bliss Place | 3008 Shawnee Drive S., Bedford, IN 47421 | Bliss AID Propco LLC |
| Blanchard Place | 825 Richard Lane, Kenton, OH 43326 | Blanchard AID Propco LLC |
| Bowman Place | 1215 Elm Street, Three Rivers, MI 49093 | Bowman AID Propco LLC |
| Bradfield Place | 3700 Oates Drive, Mesquite, TX 75150 | Bradfield AID Propco LLC |
| Brook Gardens Place | 300 O'Neil Street, Lake Mills, WI 53551 | Brook Gardens AID Propco LLC |
| Carlisle Place | 1721 Whetstone Street, Bucyrus, OH 44820 | Carlisle AID Propco LLC |
| Chisholm Place | 1450 E. North 10th Street, Abilene, TX 79601 | Chisholm AID Propco LLC |

| **Property Name (Type)** | **Property Address** | **Property Owner/Defendant** |
|---|---|---|
| Christina Place | 1435 Christian Boulevard, Franklin, IN 46131 | Christina AID Propco LLC |
| Conner Place | 2 Cottonwood Lane, Canyon, TX 79015 | Conner AID Propco LLC |
| Cottonwood Place | 3271 29th Avenue, Columbus, NE 68601 | Cottonwood AID Propco LLC |
| Cypress Place | 205 Midland Parkway, Summerville, SC 29485 | Cypress AID Propco LLC |
| Emerald Place | 297 S. 100 E., Washington, IN 47501 | Emerald AID Propco LLC |
| Greene Place | 600 Church Street, Seward, NE 68434 | Greene AID Propco LLC |
| Clen-Moore Place | 22 W. Clen Moore Boulevard, New Castle, PA 16105 | Greer AID Propco LLC |
| Hammond Place | 128 Walnut Lane, North Augusta, SC 29860 | Hammond AID Propco LLC |
| Helena Place | 1624 Paris Avenue, Port Royal, SC 29935 | Helena AID Propco LLC |
| Hickory Place | 717 S. Alamo Road, Levelland, TX 79336 | Hickory AID Propco LLC |
| Highlands Place | 225 Norfleet Drive, Somerset, KY 42501 | Highlands AID Propco LLC |
| Hitchcock Place | 102 Crepe Myrtle Drive, Aiken, SC 29803 | Hitchcock AID Propco LLC |
| Keowee Place | 475 Rochester Highway, Seneca, SC 29672 | Inn at Seneca AID Propco LLC |
| Kingsbury Place | 245 W. Rosewood Avenue, Defiance, OH 43512 | Kingsbury AID Propco LLC |
| Lake View Place | 545 Luco Road, Fond Du Lac, WI 54935 | Lake View AID Propco LLC |
| Langston Place | 127 Springdale Drive, Clinton, SC 29325 | Langston AID Propco LLC |
| Logan Place | 180 Craigdell Road, New Kensington, PA 15068 | Logan AID Propco LLC |
| Louisa Place | 2240 Main Street, Ferndale, WA 98248 | Louisa AID Propco LLC |
| Lowrie Place | 100 Stirling Village, Butler, PA 16001 | Lowrie AID Propco LLC |
| Mackenzie Place | 8609 Boston Avenue, Lubbock, TX 79423 | Mackenzie AID Propco LLC |
| Manning Place | 10 Companion Court, Greer, SC 29651 | Manning AID Propco LLC |

| **Property Name (Type)** | **Property Address** | **Property Owner/Defendant** |
|---|---|---|
| Marquis Gardens Place | 660 Cherry Tree Lane, Uniontown, PA 15401 | Marquis AID Propco LLC |
| McCullough Place | 500 Cheney Oak Drive, Johnston, PA 15905 | McCullough AID Propco LLC |
| McKinney Place | 3901 High Street, Logansport, IN 46947 | McKinney AID Propco LLC |
| Mercer Place | 5701 Dexham Road, Rowlett, TX 75089 | Mercer AID Propco LLC |
| Meredith Place | 812 W. 25th Avenue, Pampa, TX 79065 | Meredith AID Propco LLC |
| Somers Place | 199 Steelmanville Road, Egg Harbor Township, NJ 08234 | Mey AID Propco LLC |
| Miller Place | 1506 Meadowview Drive, Celina, OH 45822 | Miller AID Propco LLC |
| Monroe Place | 2770 S. Adams Street, Bloomington, IN 47403 | Monroe AID Propco LLC |
| Moorehead Place | 116 Madison Circle, Indiana, PA 15701 | Moorehead AID Propco LLC |
| Morton Place | 1500 14th Avenue, Nebraska City, NE 68410 | Morton AID Propco LLC |
| River Woods Place | 950 S. Rapids Road, Manitowoc, WI 54220 | River Wood AID Propco LLC |
| North Woods Place | 501 S. Lincoln Road, Escanaba, MI 49829 | North Woods AID Propco LLC |
| Oakley Place | 1275 Northview Drive, Greenville, OH 45331 | Oakley AID Propco LLC |
| Pathfinder Place | 3010 N. Clarkson Street, Fremont, NE 68025 | Pathfinder AID Propco LLC |
| Pinewood Place | 101 Centennial Boulevard, Goose Creek, SC 29445 | Pinewood AID Propco LLC |
| Santa Fe Place | 3404 SW 5th Street, Plainview, TX 79072 | Santa Fe AID Propco LLC |
| Sojourner Place | 5364 Green Meadow Drive, Kalamazoo, MI 49009 | Sojourner AID Propco LLC |
| Woodbourne Place | 2619 Trenton Road, Levittown, PA 19056 | Stateman Woods AID Propco LLC |
| Terrace Place | 1231 Eisner Avenue, Sheboygan, WI 53083 | Terrace AID Propco LLC |
| Bell Gardens Place | 251 Harry Sauner Road, Hillsboro, OH 45133 | Highland AID Propco LLC |

| **Property Name (Type)** | **Property Address** | **Property Owner/Defendant** |
|---|---|---|
| Wheeler Place | 2310 E. Broadway Street, Gainesville, TX 76240 | Wheeler AID Propco LLC |
| Wissota Place | 2801 County Highway I, Chippewa Falls, WI 54729 | Wissota AID Propco LLC |
| York Place | 725 W. 50th Street, Marion, IN 46953 | York AID Propco LLC |

b.      The following Properties are referred to collectively herein as the "*MCFA 25 Properties*", and the corresponding Property Owners/Defendants are referred to collectively herein as the "*MCFA 25 Defendants*".

| **Property Name (Type)** | **Property Address** | **Property Owner/Defendant** |
|---|---|---|
| Aurora Place | 675 W. Broadway Avenue, Apache Junction, AZ 85120 | Aurora AID Propco LLC |
| Jasmine Place | 3076 Shoshone Drive, Lake Havasu City, AZ 86406 | Jasmine AID Propco LLC |
| Dalton Place | 1300 W. Waugh Street, Dalton, GA 30720 | Peachtree Estates AID Propco LLC |
| Northstar Place | 3250 Quick Water Landing NW, Kennesaw, GA 30144 | Sanctuary at Northstar AID Propco LLC |
| Seven Hills Place | 279 Technology Parkway, Rome, GA 30165 | Rome AID Propco LLC |
| Floyd Place | 403 C. Street, Sergeant Bluff, IA 51054 | Floyd AID Propco LLC |
| Pinicon Place | 1615 Breca Ridge Drive, Anamosa, IA 52205 | Anamosa AID Propco LLC |
| Garnet Place | 5815 Coffey Street, Garden City, ID 83714 | Rosewind AID Propco LLC |
| Heron Place | 715 W. Comstock Avenue, Nampa, ID 83651 | Heron AID Propco LLC |
| Syringa Place | 1880 Harrison Street N., Twin Falls, ID 83301 | Chaparelle AID Propco LLC |
| Hamilton Place | 2116 Butler Road, Fort Wayne, IN 46808 | Hamilton AID Propco LLC |
| Lake City Place | 425 Chinworth Court, Warsaw, IN 46580 | Gardens at Lake AID Propco LLC |
| Lynd Place | 2410 E. McGalliard Road, Muncie, IN 47303 | Lynd AID Propco LLC |
| Seymour Place | 2288 Nicholas Court, Seymour, IN 47274 | Shields AID Propco LLC |

| Property Name (Type) | Property Address | Property Owner/Defendant |
|---|---|---|
| Marigold Place | 5723 Jackson Street Ext., Alexandria, LA 71303 | Marigold AID Propco LLC |
| Lindsay Place | 39 Supawna Road, Pennsville, NJ 08070 | Lindsay AID Propco LLC |
| Broadmoor Place | 2601 E. Villa Maria Road, Bryan, TX 77802 | Millican AID Propco LLC |
| Grayson Place | 3001 W. Crawford Street, Denison, TX 75020 | Katy AID Propco LLC |
| Hoyt Place | 1700 Hoyt Street, Sweetwater, TX 79556 | Hoyt AID Propco LLC |
| Lakewell Place | 3005 NE 2nd Street, Mineral Wells, TX 76067 | Lakewell AID Propco LLC |
| Rose Place | 8214 Anchor Drive, Port Arthur, TX 77642 | Rose AID Propco LLC |
| Winkler Place | 513 N. Adams Street, Carthage, TX 75633 | Winkler AID Propco LLC |
| Wren Place | 814 Woodard Avenue, Cleburne, TX 76033 | Wren AID Propco LLC |
| Blossom Place | 5100 W. Nob Hill Boulevard, Yakima, WA 98908 | Blossom AID Propco LLC |
| Meadows Place | 1008 E. Mountain View Avenue, Ellensburg, WA 98926 | Mountain View Meadows AID Propco LLC |

c.   The following Properties are referred to collectively herein as the "***MCFA 11 Properties***", and the corresponding Property Owners/Defendants are referred to collectively herein as the "***MCFA 11 Defendants***".

| Property Name (Type) | Property Address | Property Owner/Defendant |
|---|---|---|
| Copper Place | 12234 E. North Frontage Road, Yuma, AZ 85367 | Copper Hills AID Propco LLC |
| Powell Place | 806 W. Longhorn Road, Payson, AZ 85541 | Powell AID Propco LLC |
| Eiler Place | 920 W. Garfield Street, Clarinda, IA 51632 | Eiler AID Propco LLC |
| Swan Place | 1024 E. 12th Street, Carroll, IA 51401 | Swan AID Propco LLC |
| Masonville Place | 150 Northshore Drive, Coldwater, MI 49036 | Masonville AID Propco LLC |
| Clyde Gardens | 700 Coulson Street, Clyde, OH 43410 | Gardens at Clyde AID Propco LLC |

| Property Name (Type) | Property Address | Property Owner/Defendant |
|---|---|---|
| Strake Place | 1701 Westview Boulevard, Conroe, TX 77304 | Strake AID Propco LLC |
| Franklin Place | 5713 Parker Road East, Sumner, WA 98390 | Franklin AID Propco LLC |
| Windriver Place | 7310 North Pine Rock Street, Spokane, WA 99208 | Windriver AID Propco LLC |
| McKinley Place | W56 N225 McKinley Boulevard, Cedarburg, WI 53012 | Cedar Gardens AID Propco LLC |
| Menomonee Place | N84 W17147 Menomonee Place, Menomonee Falls, WI 53051 | Tamarack AID Propco LLC |

   d.   The following Properties are referred to collectively herein as the "***Bluegrass Properties***", and the corresponding Property Owners/Defendants are referred to collectively herein as the "***Bluegrass Defendants***".

| Property Name (Type) | Property Address | Property Owner/Defendant |
|---|---|---|
| Trail Creek Place (ASL) | 1400 E. Coolspring Avenue, Michigan City, Indiana 46360 | Michigan City 1400 AL BG Propco LLC |
| Trail Creek Place (MC) | 1300 E. Coolspring Avenue, Michigan City, Indiana 46360 | Michigan 1300 MC BG Propco LLC |
| Willow Lake Place | 2725 Lake Circle Drive, Indianapolis, Indiana 46268 | Indianapolis 2725 Lake BG Propco LLC |
| Richland Place | 3823 Lawndale Drive, Greensboro, North Carolina 27455 | Greensboro BG Propco LLC |
| Canfield Place | 2300 Canfield Road, Youngstown, Ohio 44511 | Youngstown BG Propco LLC |
| Fairfield Place | 2357 Mack Road, Fairfield, Ohio 45014 | Fairfield BG Propco LLC |
| Mansfield Place | 1841 Middle Bellville Road, Mansfield, Ohio 44904 | Mansfield BG Propco LLC |
| Urbana Place | 609 E. Water Street, Urbana, Ohio 43078 | Urbana BG Propco LLC |
| Deane Hill Place | 401 Catherine McAuley Way, Knoxville, Tennessee 37919 | Knoxville BG Propco LLC |
| Dewitt Place | 2131 Walters Drive, Morristown, Tennessee 37814 | Morristown BG Propco LLC |

| Property Name (Type) | Property Address | Property Owner/Defendant |
|---|---|---|
| Foothills Place | 3071 N. Swan Road, Tucson, Arizona 85712 | Tucson BG Propco LLC |
| Hunters Crossing Place (ASL) | 4601 NW 53rd Avenue, Gainesville, Florida 32653 | Gainesville 4601 AL BG Propco LLC |
| Lehigh Acres Place | 1251 Business Way, Lehigh Acres, Florida 33936 | Lehigh Acres BG Propco LLC |
| Wayman Place | 342 S. Wayman Street, Longwood, Florida 32750 | Longwood BG Propco LLC |
| Abilene Place North & Abilene Place South[1] | 1100 & 1102 N. Vine Street, Abilene, Kansas 67410 | Abilene 1100 East BG Propco LLC & Abilene 1102 West BG Propco LLC |
| Blue Ridge Place | 615 W. Blueridge Drive, Midwest City, Oklahoma 73110 | Midwest City BG Propco LLC |
| Dorset Place (ASL) & Dorset Place (MC) | 2435 NW 122nd Street, Oklahoma City, Oklahoma 73120 & 12401 Dorset Drive, Oklahoma, City, Oklahoma 73120 | OKC 2435 122ND BG Propco LLC |
| Northhaven Place | 7535 Hefner Road, Oklahoma City, Oklahoma 73162 | OKC 7535 Hefner BG Propco LLC |
| Southridge Place | 2500 SW 89th Street, Oklahoma City, Oklahoma 73159 | OKC 2500 89TH BG Propco LLC |
| Ten Oaks Place | 3610 SE Huntington Circle, Lawton, Oklahoma 73501 | Lawton BG Propco LLC |
| Dublin Place | 504 Firetower Road, Dublin, Georgia 31021 | Dublin BG Propco LLC |
| Kennesaw Place | 2800 Jiles Road NW, Kennesaw, Georgia 30144 | Kennesaw BG Propco LLC |
| Virginia Place | 8253 Virginia Street, Merrillville, Indiana 46410 | Merrillville BG Propco LLC |
| Park Creek Place (MC) & Park Creek Place (PC) | 1089 Horsham Road & 1091 Horsham Road, North Wales, Pennsylvania 19454 | North Wales BG Propco LLC |

---

[1] Two of the Bluegrass entities —Abilene 1100 East BG Propco LLC and Abilene 1102 West BG Propco LLC—are borrowers on the same Property. One security instrument covers the Abilene Place North and Abilene Place South Properties (located at 1100 N. Vine Street, Abilene, Kansas 67410).

| Property Name (Type) | Property Address | Property Owner/Defendant |
|---|---|---|
| Athens Place | 120 Keith Lane, Athens, Tennessee 37303 | Athens BG Propco LLC |
| Bright Leaf Place | 432 Hermitage Drive, Danville, Virginia 24541 | Danville BG Propco LLC |
| Cave Spring Place | 3585 Brambleton Avenue, Roanoke, Virginia 24018 | Roanoke BG Propco LLC |
| Cherryvale Place | 1545 Temple Lane, Rockford, Illinois 61112 | Rockford BG Propco LLC |
| Rock Run Place (MC) | 3315 Executive Drive, Joliet, Illinois 60431 | Joliet 3315 MC BG Propco LLC |
| Kesslerwood Place | 5011 Kessler Boulevard East Drive, Indianapolis, Indiana 46220 | Indianapolis 5011 State BG Propco LLC |

    e.       The following Property is referred to herein as the "***Hopkins Property***", and Hopkins AID Propco LLC is referred to herein as ("***Hopkins***").

| Property Name (Type) | Property Address | Property Owner/Defendant |
|---|---|---|
| Hopkins Place | 890 Camp Street, Sulphur Springs, TX 75482 | Hopkins AID Propco LLC |

    f.       The following Property is referred to herein as the "***Westwood Property***", and Westwood Landing AID Propco LLC is referred to herein as "***Westwood***".

| Property Name (Type) | Property Address | Property Owner/Defendant |
|---|---|---|
| Westwood Place | 37950 Airport Road, Woodsfield, OH 43793 | Westwood Landing AID Propco LLC |

    g.       The following Property is referred to herein as the "***Bluebonnet Property***", and Bluebonnet AID Propco LLC is referred to herein as ("***Bluebonnet***").

| Property Name (Type) | Property Address | Property Owner/Defendant |
|---|---|---|
| Bluebonnet Place | 3601 Victoria Avenue, College Station, TX 77845 | Bluebonnet AID Propco LLC |

h.  The following Property is referred to herein as the "***Lucas Property***", and Lucas AID Propco LLC is referred to herein as "***Lucas***".

| Property Name (Type) | Property Address | Property Owner/Defendant |
|---|---|---|
| Lucas Place | 2910 Toccoa Road, Beaumont, TX 77703 | Lucas AID Propco LLC |

i.  The following Property is referred to herein as the "***Willowpark Property***", and Willowpark AID Propco LLC is referred to herein as "***Willowpark***".

| Property Name (Type) | Property Address | Property Owner/Defendant |
|---|---|---|
| Willowpark Place | 1706 Hoover Street, New Holstein, WI 53061 | Willowpark AID Propco LLC |

6.  Each of the foregoing Properties is Fannie Mae's collateral. Defendants—Fannie Mae's borrowers—have defaulted on their loans to Fannie Mae and have advised that there is insufficient cash flow from the Properties to allow Defendants to make further payment obligations, specifically, required debt service and escrow payments, as set forth in the applicable Loan Documents.

## II.  Factual Background

7.  Fannie Mae's Application is supported by the Declaration of Carol King, a true and correct copy of which is attached hereto as **Exhibit A** and incorporated by reference.

## A.  MCFA 54 Loan Documents

8.  On or about December 19, 2014, the MCFA 54 Defendants executed that certain Multifamily Note (the "***First MCFA 54 Note***"), payable to the order of KeyBank National Association, a national banking association ("***KeyBank***"), in the original stated principal amount of $334,394,000.00 (the "***First MCFA 54 Loan***"). On or about October 31, 2016, the MCFA 54 Defendants executed that certain additional Multifamily Note (the "***Second MCFA 54 Note***"), payable to the order of KeyBank, in the original stated principal amount of $80,236,000.00 (the

"***Second MCFA 54 Loan***").  The First MCFA 54 Note and Second MCFA 54 Note are referred to collectively herein as the "***MCFA 54 Notes***."  Under the entire MCFA 54 Credit Facility, the original stated principal amount is $414,630,000.00 (the "***MCFA 54 Loans***").  The MCFA 54 Loans are further evidenced by that certain Master Credit Facility Agreement between the MCFA 54 Defendants and KeyBank dated as of December 19, 2014, along with all schedules, exhibits, and amendments thereto (the "***MCFA 54 Loan Agreement***").

9.      The MCFA 54 Notes are secured by, among other instruments, no fewer than fifty-four (54) individual Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filings, corresponding to each of the MCFA 54 Defendants and MCFA 54 Properties (the "***MCFA 54 Deeds of Trust***"), dated accordingly, executed by each of the MCFA 54 Defendants for the benefit of KeyBank.  True and correct copies of the MCFA 54 Notes, MCFA 54 Loan Agreement, and a representative sample of one MCFA 54 Deed of Trust are attached hereto as **Exhibits A-1, A-2, and A-3,** respectively.

10.      The MCFA 54 Deeds of Trust cover the real and personal property more particularly described therein and commonly known as per the Property Table located under Section 1 above.  Non-defendant operating companies own applicable licenses and operate senior care and/or senior living facilities on each of the MCFA 54 Properties (the "***MCFA 54 Facilities***").

11.      The MCFA 54 Notes, MCFA 54 Deeds of Trust, and all other documents and instruments securing or evidencing the MCFA 54 Loans are hereinafter collectively referred to as the "***MCFA 54 Loan Documents***."  Fannie Mae is the assignee of the MCFA 54 Loan Documents by way of, without limitation, those certain Assignment of Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filings, attached as **Exhibit A-4**.[2]

---

[2]      Because the Loan Documents are voluminous, only the referenced MCFA 54 Loan

B.    **MCFA 25 Loan Documents**

12.    On or about June 28, 2017, the MCFA 25 Defendants executed that certain Multifamily Note (the "***MCFA 25 Note***"), payable to the order of KeyBank, in the original stated principal amount of $84,570,000.00 (the "***MCFA 25 Loan***").   The MCFA 25 Loan is further evidenced by that certain Master Credit Facility Agreement between the MCFA 25 Defendants and KeyBank dated as of June 28, 2017, along with all schedules, exhibits, and amendments thereto (the "***MCFA 25 Loan Agreement***").

13.    The MCFA 25 Note is secured by, among other instruments, no fewer than twenty-five (25) individual Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filings, corresponding to each of the MCFA 25 Defendants and MCFA 25 Properties (the "***MCFA 25 Deeds of Trust***"), dated accordingly, executed by each of the MCFA 25 Defendants for the benefit of KeyBank.

14.    The MCFA 25 Deeds of Trust cover the real and personal property more particularly described therein and commonly known as per the Property Table located under Section 1 above.   Except as set forth in Paragraph 50 hereof, non-defendant operating companies own applicable licenses and operate senior care and/or senior living facilities on each of the MCFA 25 Properties (the "***MCFA 25 Facilities***").

15.    The MCFA 25 Note, MCFA 25 Deeds of Trust, and all other documents and instruments securing or evidencing the MCFA 25 Loan are hereinafter collectively referred to as the "***MCFA 25 Loan Documents***."   Fannie Mae is the assignee of the MCFA 25 Loan Documents

---

Documents are attached hereto.  The Loan Documents for the other loans provide the same substantive rights to Fannie Mae, and will be produced to the Court upon request.

by way of, without limitation, those certain Assignment of Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filings.

**C.      MCFA 11 Loan Documents**

16.      On or about December 22, 2016, the MCFA 11 Defendants executed that certain Multifamily Note (the "***MCFA 11 Note***"), payable to the order of KeyBank, in the original stated principal amount of $70,564,000.00 (the "***MCFA 11 Loan***").   The MCFA 11 Loan is further evidenced by that certain Master Credit Facility Agreement between the MCFA 11 Defendants and KeyBank dated as of December 22, 2016, along with all schedules, exhibits, and amendments thereto (the "***MCFA 11 Loan Agreement***").

17.      The MCFA 11 Note is secured by, among other instruments, no fewer than eleven (11) individual Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filings, corresponding to each of the MCFA 11 Defendants and MCFA 11 Properties (the "***MCFA 11 Deeds of Trust***"), dated accordingly, executed by each of the MCFA 11 Defendants for the benefit of KeyBank.

18.      The MCFA 11 Deeds of Trust cover the real and personal property more particularly described therein and commonly known as per the Property Table located under Section 1 above.   Non-defendant operating companies own applicable licenses and operate senior care and/or senior living facilities on each of the MCFA 11 Properties (the "***MCFA 11 Facilities***").

19.      The MCFA 11 Note, MCFA 11 Deeds of Trust, and all other documents and instruments securing or evidencing the MCFA 11 Loan are hereinafter collectively referred to as the "***MCFA 11 Loan Documents***."   Fannie Mae is the assignee of the MCFA 11 Loan Documents by way of, without limitation, those certain Assignment of Multifamily Mortgage, Assignment of Rents and Security Agreement**.**

**D.    Hopkins Loan Documents**

20.    On or about December 18, 2020, Defendant Hopkins executed that certain Multifamily Note (the "***Hopkins Note***"), payable to the order of KeyBank, in the original stated principal amount of $2,784,000.00 (the "***Hopkins Loan***").  The Hopkins Loan is further evidenced by that certain Multifamily Loan and Security Agreement between Hopkins and KeyBank dated as of December 18, 2020 (the "***Hopkins Loan Agreement***").

21.    The Hopkins Note is secured by, among other instruments, a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "***Hopkins Deed of Trust***"), dated as of December 18, 2020, executed by Hopkins for the benefit of KeyBank.

22.    The Hopkins Deed of Trust covers the real and personal property more particularly described therein and commonly known as Hopkins Place and located at 890 Camp Street, Sulphur Springs, Texas 75482 (as fully defined in the Hopkins Deed of Trust, the "***Hopkins Property***").  A non-defendant operating company owns applicable licenses and operates a senior care and/or senior living facility on the Hopkins Property (the "***Hopkins Facility***").

23.    The Hopkins Note, Hopkins Deed of Trust, and all other documents and instruments securing or evidencing the Hopkins Loan are hereinafter collectively referred to as the "***Hopkins Loan Documents***."  Fannie Mae is the assignee of the Hopkins Loan Documents by way of, without limitation, that certain Assignment of Mortgage.

**E.    Westwood Loan Documents**

24.    On or about December 18, 2020, Defendant Westwood executed that certain Multifamily Note (the "***Westwood Note***"), payable to the order of KeyBank, in the original stated principal amount of $2,948,000.00 (the "***Westwood Loan***").   The Westwood Loan is further

evidenced by that certain Multifamily Loan and Security Agreement between Westwood and KeyBank dated as of December 18, 2020 (the "***Westwood Loan Agreement***").

25.     The Westwood Note is secured by, among other instruments, a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "***Westwood Deed of Trust***"), dated as of December 18, 2020, executed by Westwood for the benefit of KeyBank.

26.     The Westwood Deed of Trust covers the real and personal property more particularly described therein and commonly known as Westwood Place and located at 37950 Airport Road, Woodsfield, Ohio 43793 (as fully defined in the Westwood Deed of Trust, the "***Westwood Property***").   A non-defendant operating company owns applicable licenses and operates a senior care and/or senior living facility on the Westwood Property (the "***Westwood Facility***").

27.     The Westwood Note, Westwood Deed of Trust, and all other documents and instruments securing or evidencing the Westwood Loan are hereinafter collectively referred to as the "***Westwood Loan Documents***."  Fannie Mae is the assignee of the Westwood Loan Documents by way of, without limitation, that certain (i) Assignment of Mortgage; and (ii) an Assignment of Collateral Agreements and Other Loan Documents.

F.     **Bluebonnet Loan Documents**

28.     On or about December 18, 2020, Defendant Bluebonnet executed that certain Multifamily Note (the "***Bluebonnet Note***"), payable to the order of KeyBank, in the original stated principal amount of $2,238,000.00 (the "***Bluebonnet Loan***").   The Bluebonnet Loan is further evidenced by that certain Multifamily Loan and Security Agreement between Bluebonnet and KeyBank dated as of December 18, 2020 (the "***Bluebonnet Loan Agreement***").

29.     The Bluebonnet Note is secured by, among other instruments, a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "***Bluebonnet Deed of Trust***"), dated as of December 18, 2020, executed by Bluebonnet for the benefit of KeyBank.  .

30.     The Bluebonnet Deed of Trust covers the real and personal property more particularly described therein and commonly known as Bluebonnet Place and located at 3601 Victoria Avenue, College Station, Texas 77845 (as fully defined in the Bluebonnet Deed of Trust, the "***Bluebonnet Property***").  A non-defendant operating company owns applicable licenses and operates a senior care and/or senior living facility on the Bluebonnet Property (the "***Bluebonnet Facility***").

31.     The Bluebonnet Note, Bluebonnet Deed of Trust, and all other documents and instruments securing or evidencing the Bluebonnet Loan are hereinafter collectively referred to as the "***Bluebonnet Loan Documents***."  Fannie Mae is the assignee of the Bluebonnet Loan Documents by way of, without limitation, that certain (i) Assignment of Mortgage; and (ii) an Assignment of Collateral Agreements and Other Loan Documents.

### G.     Lucas Loan Documents

32.     On or about December 18, 2020, Defendant Lucas executed that certain Multifamily Note (the "***Lucas Note***"), payable to the order of KeyBank, in the original stated principal amount of $4,372,000.00 (the "***Lucas Loan***").  The Lucas Loan is further evidenced by that certain Multifamily Loan and Security Agreement between Lucas and KeyBank dated as of December 18, 2020 (the "***Lucas Loan Agreement***").

33.     The Lucas Note is secured by, among other instruments, a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "***Lucas Deed of Trust***"), dated as of December 18, 2020, executed by Lucas for the benefit of KeyBank.

34.     The Lucas Deed of Trust covers the real and personal property more particularly described therein and commonly known as Lucas Place and located at 2910 Toccoa Road, Beaumont, Texas 77703 (as fully defined in the Lucas Deed of Trust, the "***Lucas Property***").  A non-defendant operating company owns applicable licenses and operates a senior care and/or senior living facility on the Lucas Property (the "***Lucas Facility***").

35.     The Lucas Note, Lucas Deed of Trust, and all other documents and instruments securing or evidencing the Lucas Loan are hereinafter collectively referred to as the "***Lucas Loan Documents***."  Fannie Mae is the assignee of the Lucas Loan Documents by way of, without limitation, that certain (i) Assignment of Mortgage; and (ii) an Assignment of Collateral Agreements and Other Loan Documents.

## H.     Willowpark Loan Documents

36.     On or about December 18, 2020, Defendant Willowpark executed that certain Multifamily Note (the "***Willowpark Note***"), payable to the order of KeyBank, in the original stated principal amount of $2,126,000.00 (the "***Willowpark Loan***").  The Willowpark Loan is further evidenced by that certain Multiple Loan and Security Agreement between Willowpark and KeyBank dated as of December 18, 2020 (the "***Willowpark Loan Agreement***").

37.     The Willowpark Note is secured by, among other instruments, a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "***Willowpark Deed of Trust***"), dated as of December 18, 2020, executed by Willowpark for the benefit of KeyBank.

38.     The Willowpark Deed of Trust covers the real and personal property more particularly described therein and commonly known as Willowpark Place and located at 1706 Hoover Street, New Holstein, Wisconsin 53061 (as fully defined in the Willowpark Deed of Trust, the "***Willowpark Property***").  A non-defendant operating company owns applicable licenses and operates a senior care and/or senior living facility on the Willowpark Property (the "***Willowpark Facility***").

39.     The Willowpark Note, the Willowpark Deed of Trust, and all other documents and instruments securing or evidencing the Willowpark Loan are hereinafter collectively referred to as the "***Willowpark Loan Documents***."  Fannie Mae is the assignee of the Willowpark Loan Documents by way of, without limitation, that certain (i) Assignment of Mortgage; and (ii) an Assignment of Collateral Agreements and Other Loan Documents.

## I.    Bluegrass Loan Documents

40.     On or about August 31, 2016, the Bluegrass Defendants executed that certain Multifamily Note (the "***First Bluegrass Note***"), payable to the order of Wells Fargo Bank, National Association, a national banking association ("***Wells Fargo***"), in the original stated principal amount of $56,604,000.00 (the "***First Bluegrass Loan***").  On or about September 29, 2016, the Bluegrass Defendants executed that certain additional Multifamily Note (the "***Second Bluegrass Note***"), payable to the order of Wells Fargo, in the original stated principal amount of $42,622,000.00 (the "***Second Bluegrass Loan***").  On or about November 1, 2016, the Bluegrass Defendants executed that certain additional Multifamily Note (the "***Third Bluegrass Note***"), payable to the order of Wells Fargo, in the original stated principal amount of $40,333,000.00 (the "***Third Bluegrass Loan***").  The First Bluegrass Note, Second Bluegrass Note, and Third Bluegrass Note are referred to collectively herein as the "***Bluegrass Notes***."  Thus, the original, principal

amount under the Bluegrass Credit Facility totals $139,559,000.00 (the "**Bluegrass Loans**").  The Bluegrass Loans are further evidenced by that certain Master Credit Facility Agreement between the Bluegrass Defendants and Wells Fargo dated as of August 31, 2016, along with all schedules, exhibits, and amendments thereto (the "**Bluegrass Loan Agreement**").

41.     The Bluegrass Notes are secured by, among other instruments, no fewer than thirty (30)[3] individual Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filings, corresponding to each[4] of the Bluegrass Defendants and Bluegrass Properties (the "**Bluegrass Deeds of Trust**"), dated accordingly, executed by each of the Bluegrass Defendants for the benefit of Wells Fargo.

42.     The Bluegrass Deeds of Trust encumber the real and personal property more particularly described therein and commonly known as per the Property Table located under Section 1 above.  Except as set forth in Paragraph 50 hereof, non-defendant operating companies own applicable licenses and operate senior care and/or senior living facilities on each of the Bluegrass Properties (the "**Bluegrass Facilities**").

43.     The Bluegrass Notes, Bluegrass Deeds of Trust, and all other documents and instruments securing or evidencing the Bluegrass Loans are hereinafter collectively referred to as the "**Bluegrass Loan Documents**."  Fannie Mae is the assignee of the Bluegrass Loan Documents by way of, without limitation, those certain Assignment of Multifamily Mortgage, Assignment of

---

[3] While there are thirty-one Bluegrass Defendants and only thirty security instruments, two of the Defendants—Abilene 1100 East BG Propco LLC and Abilene 1102 West BG Propco LLC—are borrowers on the same Property.

[4] One security instrument covers the Abilene Place North and Abilene Place South Properties (located at 1100 N. Vine Street, Abilene, Kansas 67410).

Leases and Rents, Security Agreement and Fixture Filings.  Thus, Fannie Mae is the owner and holder under the Bluegrass Loan Documents and the party entitled to enforce same.

**J.      Facts Relevant to All Loan Documents**

44.      The MCFA 54 Notes, MCFA 25 Note, MCFA 11 Note, Hopkins Note, Westwood Note, Bluebonnet Note, Lucas Note, Willowpark Note, and Bluegrass Notes shall each be referred to herein individually as a "***Note***," and collectively as the "***Notes***."

45.      The MCFA 54 Loan, MCFA 25 Loan, MCFA 11 Loan, Hopkins Loan, Westwood Loan, Bluebonnet Loan, Lucas Loan, Willowpark Loan, and Bluegrass Loan shall each be referred to herein individually as a "***Loan***," and collectively as the "***Loans***."

46.      The MCFA 54 Loan Agreement, MCFA 25 Loan Agreement, MCFA 11 Loan Agreement, Hopkins Loan Agreement, Westwood Loan Agreement, Bluebonnet Loan Agreement, Lucas Loan Agreement, Willowpark Loan Agreement, and Bluegrass Loan Agreement shall each be referred to herein individually as a "***Loan Agreement***," and collectively as the "***Loan Agreements***."

47.      The MCFA Deeds of Trust, MCFA 25 Deeds of Trust, MCFA 11 Deeds of Trust, Hopkins Deed of Trust, Westwood Deed of Trust, Bluebonnet Deed of Trust, Lucas Deed of Trust, Willowpark Deed of Trust, and Bluegrass Deeds of Trust shall each be referred to herein individually as a "***Deed of Trust***," and collectively as the "***Deeds of Trust***."

48.      The MCFA 54 Loan Documents, MCFA 25 Loan Documents, MCFA 11 Loan Documents, Hopkins Loan Documents, Westwood Loan Documents, Bluebonnet Loan Documents, Lucas Loan Documents, Willowpark Loan Documents, and Bluegrass Loan Documents shall each be referred to herein individually as a "***Loan Document***," and collectively as the "***Loan Documents***."

49.     The MCFA 54 Properties, MCFA 25 Properties, MCFA 11 Properties, Hopkins Property, Westwood Property, Bluebonnet Property, Lucas Property, Willowpark Property, and Bluegrass Properties shall be collectively referred to herein as the "***Properties***."

50.     The MCFA 54 Facilities, MCFA 25 Facilities, MCFA 11 Facilities, Hopkins Facility, Westwood Facility, Bluebonnet Facility, Lucas Facility, Willowpark Facility, and Bluegrass Facilities are collectively referred to herein as the "***Facilities***."  Each Facility is operated by a nondefendant operating company (each, an "***Existing Operator***") that holds the license for such Facility except for (i) those Properties commonly known as Garnet Place (Garden City, ID), Heron Place (Nampa, ID) and Syringa Place (Twin Falls, ID), where the existing manager is the license holder, and (ii) Abilene Place North (Abilene, KS) and Abilene Place South (Abilene, KS), where the applicable Defendants, non-defendant operating companies and Existing Manager (as hereafter defined) are collectively the license holders, and is managed by a nondefendant management company (each, an "***Existing Manager***") under a management agreement between such management company and the corresponding nondefendant operating company.

51.     KeyBank and Wells Fargo assigned, negotiated and transferred to Fannie Mae the Loan Documents regarding the Properties that secure the Notes, such that Fannie Mae is the current owner and holder of the Notes and entitled to enforce the Notes and liens and security interests against Defendants as to the Properties.  KeyBank is now the servicer of the MCFA 54 Loans, MCFA 25 Loan, MCFA 11 Loan, Hopkins Loan, Westwood Loan, Bluebonnet Loan, Lucas Loan, and Willowpark Loan.  Wells Fargo is now the servicer of the Bluegrass Loans.

52.     The Existing Operators and Existing Managers consent to the relief requested herein.

**K.**      **Background and Defendants' Weakened Financial Condition**

53.      Defendants were not immune to declining net cash flows as a result of the COVID-19 pandemic and its negative effects on senior living facilities as a whole.  In February 2023, Defendants under the MCFA 54 Loans, MCFA 25 Loan, MCFA 11 Loan, Hopkins Loan, Westwood Loan, Bluebonnet Loan, Lucas Loan, and Willowpark Loan failed to pay the monthly debt service payments required under the applicable Loan Documents.  In March 2023, the Bluegrass Defendants failed to pay the monthly debt service payments required under the Bluegrass Loan Documents.

54.      Defendants' failure to timely pay all amounts due under the Loan Documents constitutes an Event of Default by each of the Defendants under Section 2.03 of their respective Loan Agreements.

55.      Upon information and belief, the value of the Properties is now substantially less than the amount of total indebtedness they secure.  In addition, Defendants have advised Fannie Mae that the Facilities and the management companies responsible for their day-to-day operations operate at a loss.  Given these continuing operational losses, combined with current market conditions in the senior living industry and the broader economy, the Properties are at imminent risk of a significant further decline in value.

56.      On March 3, 2023, Fannie Mae delivered written notices of acceleration regarding the MCFA 54 Loan, MCFA 25 Loan, MCFA 11 Loan, Hopkins Loan, Westwood Loan, Bluebonnet Loan, Lucas Loan, and Willowpark Loan.  On March 16, 2023, Fannie Mae delivered written notice of acceleration regarding the Bluegrass Loan.  True and correct copies of the Notices of Acceleration are attached hereto as **Exhibits A-5 and A-6.**

**L.     Events of Default**

57.     The Defendants have failed to timely pay all amounts required by the Loan Documents.  Each such failure constitutes an Event of Default as defined in the Loan Documents. *See* Loan Agreements at § 14.01(a)(1).

58.     As a result of the Event of Default, each Defendant's license to collect rents from each Property has automatically terminated pursuant to Section 3(c) of each Deed of Trust.

59.     Each of the Defendants has advised Fannie Mae that, due to the unavailability of cash flow from the Properties, they cannot make any further payments under the Notes and that they consent to transition the Properties to Fannie Mae through receivership as soon as possible.

**M.     Remedies for Default**

60.     Each of the Loan Agreements provides that upon an Event of Default Defendants shall fully cooperate with the Fannie Mae and any receiver appointed by a court.  *See e.g.*, Loan Agreements at § 14.02(d)(1)(A).  Indeed, section 3 of each Deed of Trust provides that upon the occurrence of, and during the continuance of any Event of Default, (i) Fannie Mae may enter into or upon each Property or any part thereof to take possession of each Property, either personally or through its agents; (ii) the applicable Defendant's right to collect rents shall automatically terminate and Fannie Mae shall without notice be entitled to all rents as they become due and payable, including rents then due and unpaid; and (iii) Fannie Mae may apply for the appointment of a receiver for each Property.  Section 3(e) of the Deed of Trust further provides that upon the occurrence of, and during the continuance of any Event of Default, should Fannie Mae apply for the appointment of a receiver, each Defendant expressly consents to the appointment of a receiver, including an appointment *ex parte*.

61.     Section 5 of each Deed of Trust provides that upon the occurrence of, and during the continuance of, any Event of Default, Fannie Mae may (i) declare the unpaid debt to be immediately due and payable; and (ii) institute proceedings for the complete foreclosure of the Deed of Trust.

62.     Section 5 of each Deed of Trust further provides that each Defendant agrees to pay all costs and expenses incurred by Fannie Mae in pursuing remedies.

63.     Without limitation, through section 10(j) of each applicable Subordination, Assignment, and Security Agreement, through section 7(f) of that certain Omnibus Assignment of Management Agreements and Licenses, and through section 18.4 of the Existing Management Agreements, the Existing Operators and Existing Managers agreed to continue to perform their operation or management duties during a receivership and pending transition to new operators and new managers. Defendants, the Existing Operators, and the Existing Managers agree to the appointment of a receiver, subject to the terms and conditions set forth in the proposed order submitted herewith.

### III.     STATEMENT OF POINTS AND AUTHORITIES

**A.     Proposed Receiver**

64.     Pursuant to Rule 66 of the Federal Rules of Civil Procedure, Fannie Mae requests that the Court appoint a receiver to take control of, and to manage, each of the Properties pending Fannie Mae's potential foreclosure or receivership sale.  The parties proposed Mike Flanagan as receiver.  Mr. Flanagan is an attorney with over 30 years of experience in the restructuring industry, with a focus on healthcare, and is a nationally-known expert in receiverships involving senior-housing communities.  His current résumé is attached as **Exhibit B** and incorporated by reference.[5]

---

[5] *See also* http://www.mffllc.com/attorney/michael-f-flanagan

As detailed in his résumé, he has been appointed in dozens of actions throughout the United States. Mr. Flanagan is not a party, attorney, or other person interested in this action.

**B.      Defendants Have Consented to the Appointment of a Receiver**

65.      As set forth in the proposed order submitted herewith, each Defendant consents to the appointment of a receiver.

66.      Moreover, each of the Loan Agreements provides that upon an Event of Default Defendants shall fully cooperate with the Fannie Mae and any receiver appointed by a court. *See e.g.*, Loan Agreements at § 14.02(d)(1)(A).  Pursuant to Article 3(e) of each Deed of Trust, each Defendant consents to the appointment of a receiver as follows:

> (e)      Notwithstanding any other right provided [Fannie Mae] under this Security Instrument or any other Loan Document, if an Event of Default has occurred and is continuing, and regardless of the adequacy of [Fannie Mae]'s security or [Defendant]'s solvency, and without the necessity of giving prior notice (oral or written) to [Defendant], [Fannie Mae] may apply to any court having jurisdiction for the appointment of a receiver for the [Property] to take any or all of the actions set forth in Section 3. If [Fannie Mae] elects to seek the appointment of a receiver for the [Property] at any time after an Event of Default has occurred and is continuing, [Defendant], by its execution of this Security Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte*, if  permitted by applicable law.   [Defendant] consents to shortened time consideration of a motion to appoint a receiver. . . .

Ex. A-3, at § 3(e).

67.      By executing the Deeds of Trust, all interested parties have consented to the appointment of a receiver. *See New York Life Ins. Co. v. Watt West Inv. Corp.,* 755 F. Supp. 287, 292 (E.D. Calif. 1991) (fact that the parties agreed to the appointment of a receiver in a Deed of Trust is entitled to great weight when the court exercises its discretion to determine whether to appoint a receiver).

**C.      Considerations for Appointment of a Receiver**

68.     This Court has the authority to appoint receivers and administer receiverships. *See*

Fed. R. Civ. P. 66; 28 U.S.C. § 959(b).   Section 959(b) of Title 28 of the United States Code

specifically provides:

> [A] trustee, receiver or manager appointed in any case pending in
> any court of the United States, including a debtor in possession, shall
> manage and operate the property in his possession as such trustee,
> receiver or manager according to the requirements of the valid laws
> of the State in which such property is situated, in the same manner
> that the owner or possessor thereof would be bound to do if in the
> possession thereof.

28 U.S.C. § 959(b).

69.     Pursuant to 28 U.S.C. § 1692, in proceedings in a district court where a receiver is

appointed for property—real, personal, or mixed—situated in different districts, process may issue

and be executed in any such district as if the property lay wholly within one district, but orders

affecting the property shall be entered of record in each of such districts.   Further, the receivership

court's jurisdiction extends to persons and property in any district where receivership property

may be located. *See S.E.C. v. Vision Comm., Inc.*, 74 F.3d 287, 290 (D.C. Cir. 1996).   Further still,

a receiver shall, within ten days after the entry of his order of appointment, file copies of the

complaint and such order of appointment in the district court for each district in which property is

located. 28 U.S.C. § 754.   The failure to file such copies in any district shall divest the receiver of

jurisdiction and control over all such property in that district. *Id*.

70.     Whether to appoint a receiver is a question of federal law. *See Nat'l P'ship Inv.*

*Corp. v. Nat'l Housing Dev. Corp.*, 153 F.3d 1289, 1291-92 (11th Cir. 1998).   Indeed, this Court

has recognized the propriety of appointing a receiver at the request of a secured creditor where

there is evidence that the property of the defendants will be lost, damaged, or diminished in value

if the receiver is not appointed. *See Brill & Harrington Inv. V. Vernon Savings & Loan Ass'n*, 787

F. Supp. 250, 253-54 (D.D.C. 1992):

> Creditors with a security interest in real property have a well-established interest in the property sufficient to support the appointment of a receiver.  And federal courts typically consider, *inter alia*, the following factors when determining the propriety of appointing a receiver under *Rule* 66:
>
> i.   Inadequacy of security to satisfy the debt;
> ii.  Financial position of the debtor;
> iii. Fraudulent conduct on the defendants' part;
> iv.  Inadequacy of legal remedies;
> v.   Imminent danger of the property being lost, concealed, injured, diminished in value, or squandered;
> vi.  Probability that harm to moving party by denial of appointment would outweigh injury to parties opposing appointment;
> vii. Probability of moving party's success in the action and the possibility of irreparable injury to its interest in the property; and
> viii. Whether moving party's interest sought to be protected will in fact be well-served by receivership.

(internal citations omitted).

71.    *Inadequacy of legal remedies and unavailability of less severe equitable remedies*:

because the Properties are Fannie Mae's sole source of recovery, there is no legal remedy that

would be adequate to protect Fannie Mae's interest(s).  As a result of the Events of Default, each

Defendant's license to collect rents from each Property has automatically terminated pursuant to

Section 3(c) of each Deed of Trust.  Due to the nature of the Properties, and the requirement to

provide advance notice to State regulators of a change in control, it will take months to effectuate

foreclosure of the Properties.  During that time period, the Defendants will continue to collect and

spend rents from the Properties (which are part of Fannie Mae's collateral) for the continued

operation and maintenance of the Properties, but not for paying debt service, in direct violation of

the Loan Documents.  Foreclosure alone is therefore inadequate.  Moreover, there are no less

severe equitable remedies.  Fannie Mae does not require injunctive relief, it requires control of the collateral through a receiver so that it can be sold or foreclosed, and this must be done in a manner that is least disruptive to the residents of the Property in order to maintain value and to avoid disruptions.

72.    *Financial position of Defendants/Imminent danger that the Properties will decline in value*: as detailed more fully above, the Defendants' financial performance shows that Fannie Mae's interests in the Properties would benefit from the proposed receivership and funding that could be provided by Fannie Mae therein.

73.    *Fannie Mae has a valid claim*:  the Application establishes that Fannie Mae is the owner and holder of the Notes.  They have been accelerated.  All indebtedness thereunder is now presently due and owing in an amount not less than $697,089,268.

74.    *Probability that conduct has occurred that will frustrate Fannie Mae's claim*:  there is a clear necessity to protect Fannie Mae's interest.  The obligations under the Notes are nonrecourse and are in default.  Because non-defendant operating companies operate senior housing, assisted living, and/or memory care Facilities on the Defendants' Properties, it is possible that the residents of such Properties could be at risk if continuity of care is not maintained, and an adequately capitalized operator is necessary to maintain consistent care for the residents of the Property.  The Receiver proposed by Fannie Mae is qualified and well-positioned to ensure continuity of operations of the Properties and consistent care for the residents.  Without the protection of this order, the Property will continue to lose money and Fannie Mae's debt cannot be serviced.  With each passing day and month, the amount unpaid on the debt held by Fannie Mae increases.

75.     *Appointing a receiver will do much more good than harm*:  the appointment of a receiver will help ensure that the residents of the Properties continue to be cared for while the Property is transitioned.

76.     The Loan Documents are in default, and without the appointment of a receiver, it is possible that the Properties (Fannie Mae's primary collateral) could be in danger of being materially injured or lost.  The Defendants have communicated that they are unable to satisfy their monetary obligations under the Loan Documents with the operating cash flow from the Properties.

77.     The immediate appointment of a receiver is therefore needed on contractual and equitable grounds to operate each of the Properties and provide stability and continuity of operations for the residents at each of the Properties.

78.     Fannie Mae therefore requests that the Court appoint a receiver over each of the Properties and grant the receiver the powers set forth in the proposed order submitted herewith as **Exhibit C** in order to protect Fannie Mae's interest in the Properties, pending sale of the Properties as may be approved by the Court or non-judicial foreclosure, and to protect the residents of the Facilities.

## IV.   PRAYER

Wherefore, Fannie Mae prays that Defendants be cited to appear and make answer herein and that Fannie Mae have a judgment against Defendants that an order be entered in substantially the form attached hereto appointing a receiver without delay and authorizing the receiver as set forth therein.

Dated: March 30, 2023 Respectfully submitted,

**REED SMITH LLP**

By:  */s/ Daniel Z. Herbst*
     Daniel Z. Herbst
     D.D.C. Bar No. 501161
     1301 K Street, N.W.
     Suite 1000, East Tower
     Washington, DC 20005-3317
     T:  202-414-9232
     F:  202-414-9299
     dherbst@reedsmith.com

     *and*

     Keith M. Aurzada (*pro hac to be filed*)
     Texas Bar No. 24009880
     Michael P. Cooley (*pro hac to be filed*)
     Texas Bar No. 24034388
     Jay L. Krystinik (*pro hac to be filed*)
     Texas Bar No. 24041279
     **REED SMITH LLP**
     2850 N. Harwood Street
     Suite 1500
     Dallas, TX 75201
     T:  469-680-4200
     F:  469-680-4299
     kaurzada@reedsmith.com
     mpcooley@reedsmith.com
     jkrystinik@reedsmith.com

     *Attorneys for Fannie Mae*

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2023, a true and correct copy of the foregoing application and all attachments were electronically filed with the Clerk of Court using the CM/ECF system, and served upon the following counsel for Defendants, Existing Operators, and Existing Managers via email:

Mary Elizabeth Miller
D.D.C. Bar No. 252694
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
T:  202-389-3277
mary.miller@kirkland.com


*/s/ Daniel Z. Herbst*
Daniel Z. Herbst